IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC,<br><br>        Defendant. | Case No. 2:25-cv-05238-JFM<br><br>CLASS ACTION<br><br>MOTION TO DISMISS<br>CLASS ACTION COMPLAINT |

**DEFENDANT CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC, BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendant Children's Dental Health Associates, LLC ("CDHA") by and through its undersigned counsel, Cipriani & Werner, P.C., respectfully moves this Honorable Court to dismiss the Class Action Complaint of Plaintiff, Jourey Newell ("Plaintiff"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and in support submit the following memorandum.

**I.    INTRODUCTION**

"[I]t is tempting, if the only tool you have is a hammer, to treat everything if it were a nail."[1] Put another way, familiarity with a given tool creates a risk that the user will believe that the tool suits every situation. But not everything is a nail and not every communication is a violation of the Telephone Consumer Protection Act ("TCPA").

---

[1] Maslow, Abraham, *Toward a Psychology of Being* (1962)

Plaintiff, a serial TCPA litigant, brings this action following the receipt of two text messages. The CAC is one of dozens of such actions brought by Plaintiff. Notably, this action *See, e.g., Newell v. Hoffenmer Inc.*, Docket No. 1:25-cv-03961 (N.D. Ill. Apr 11, 2025); *Newell v. Yoke Global Inc.*, Docket No. 1:25-cv-03049 (N.D. Ga. Jun 02, 2025); *Newell v. Pella Windows & Doors, Inc.*, Docket No. 2:25-cv-06074 (E.D. Pa. Oct 24, 2025). In dozens of similar such actions, Plaintiff rehashes boilerplate allegations, similar if not identical allegations to those asserted against CDHA. A well-pleaded complaint however is not one-size-fits-all. These allegations, as asserted against CDHA, fail to state a claim upon which relief may be granted.

First, the plain language of the TCPA does not include text messages. Beyond the clear meaning of the statute, even if text messages fall under the TCPA, the messages referenced in the CAC fall under the non-telemarketing exemption of the TCPA. Similarly, the subject messages were not "telephone solicitations" within the meaning of the TCPA. Lastly, Plaintiff's claim for injunctive relief must fail given that he fails to plead the likelihood of CDHA texting him again.

## II.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On September 11, 2025, Plaintiff initiated this putative class action by filing the CAC.. The basis of Plaintiff's claims are purportedly two text messages sent to him by CDHA - a pediatric dental care provider, despite registering the subject cell phone number with the National Do Not Call Registry. *See Id.* at ¶¶ 15, 22.

The purportedly offending texts appear to be two messages related to pediatric dental care for an identified patient. *See Id.* at ¶ 21. A purported screenshot of the correspondence was incorporated in the CAC as follows:



Book an appt that fits your family's availability: https://app.nexhealth.com/appt/cdm?cid=8258068&cm=sms&ct=manual&lid=4103&nh=1

Children's Dental Health - Downingtown
To unsubscribe, reply STOP

Wednesday 6:27 PM

Make Lailynn's smile shine bright this summer! Let's get your kiddo scheduled for a check-up so they can head back to school with a clean, confident smile! Book an appointment here: https://app.nexhealth.com/appt/cdm?cid=8441251&cm=sms&ct=manual&lid=4103&nh=1

See you soon at Children's Dental Health - Downingtown!
To unsubscribe, reply STOP

Wednesday 10:24 PM

Cease and desist all communications

*Id.* at ¶ 22. After the second message, Plaintiff demanded a cessation of all future communication from CDHA- a request which appears to have been honored. *See Id.* Plaintiff asserts that the purpose of these text messages "was to solicit business for [CDHA's] practice." *Id.* at ¶ 24. Plaintiff denies having been a customer of CDHA, doing business with CDHA or inquiring to be a customer of CDHA. *Id.* at ¶ 20. He suggests that his "phone line was tied up" and that "the *calls* unnecessarily used battery life, storage space, bandwidth, and wear and tear." *Id.* at ¶ 30 (emphasis added).

### III. ARGUMENT

#### A. Plaintiff's Claims Should be Dismissed Under Rule 12(b)(6) for Failure to Allege Sufficient Facts to Support his Claims Under the TCPA

##### 1. Standard of Review

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The plaintiff's complaint need not include a specific accounting, but must set forth a plausible claim of relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the plaintiff's claims must be plausible on their face, which requires "more than a sheer possibility that a defendant has acted unlawfully," and this determination is a fact-specific inquiry. *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556–7). A plaintiff cannot meet their burden with conclusions, labels or a mere recitation of the elements of each claim. *See Twombly*, 550 U.S. at 545. Therefore, when ruling on a motion to dismiss, a court begins by "identifying pleadings that, because the are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679.

##### 2. Section 227(c) of the TCPA Does Not Apply to Text Messages

The plain meaning of the TCPA clearly excludes text messages. Despite the clear understanding of the language of the TCPA, courts had long deferred to the FCC's interpretation

of the statute rather than the language of the statute itself. The United State Supreme Court disavowed that practice in *Mclaughlin Chiropractic Assoc., Inc., v. McKesson Corp., et al.* specifically stating: "In civil enforcement proceedings under the Telephone Consumer Protection Act, are district courts bound by the Federal Communications Commission's interpretation of the Act? The answer is no." 606 U.S. 146, 149 (2025). The FCC's decision to extend the definition of a "call" to include text messages represents a policy-based decision rather than one grounded in the text of the statute. The *McLaughlin* decision directs trial courts to interpret the prohibitions of the TCPA using ordinary statutory construction; doing so leads to the conclusion that Section 227(c) of the TCPA *does not* apply to text messages.

Statutes must be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment" by the Courts. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). When considering the ordinary public meaning of text messages and telephone calls, "no ordinary person would think of a text message as a 'telephone call.'" *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 at *1 (N.D. Fl Aug. 26, 2025). Congress' choice of words is presumed to be deliberate. *Univ. of Texas Southwestern Med. Ctr. V. Nassar*, 570 U.S. 338, 353 (2013). Therefore, if Congress uses different language within the same statute, such as using "telephone call or message" in one place but "telephone call" in a neighboring provision, courts are to presume that, "when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Davis*, 2025 WL 2491195 at *2 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dire., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025))(finding that where the TCPA uses the phrase "telephone call or message" in one provision while using "telephone call" in another, it did not contemplate that the term "telephone call" included all messages). "Moreover, in today's American parlance, 'telephone

call' means something entirely different from 'text message.'" *Jones v. Blackstone Medical Services, LLC*, --- F.Supp. 3d ---, 2024 WL 2042764 (C.D. Il. July 21, 2025). Similarly, Section 227(e) of the TCPA defines the terms "text message," "text messaging," and "text message service;" accordingly, it is clear that Congress contemplated text messages, and the Court can reasonably infer that Congress made the deliberate decision *not* to include text messages as prohibited conduct in Section 227(c). *See* 47 U.S.C. § 227(e); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT,(M.D. Fla. Oct. 24, 2025), attached hereto as Exhibit A ("In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.")(citations omitted). Pursuant to Section 227(c)(5) of the TCPA, a private right of action only exists for more than one "telephone call." 47 U.S.C. § 227(c)(5).[2]

The plain language of the TCPA requires that text messages be treated differently than telephone calls. When enacting the TCPA, "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the later." *Id.* at *3. Frankly, *Davis* unwittingly but cogently directs us to how Plaintiff's own—albeit boilerplate—allegations undercut his claim. Plaintiff alleges unwanted text messages rather than telephone calls, but Plaintiff pleads that his "phone line was tied up" and that "the calls unnecessarily used battery life,

---

[2] To the extent that Plaintiff's claims rely on the FCC's 2003 order incorporating "text message" as a violation of Section 227(c), "the FCC explicitly mentions 'automatic telephone dialing system', 'artificial or prerecorded message', and 'automated or prerecorded telephone calls'" *Blackstone Medical Services* at * 4 (citations omitted). The order itself only refers to Section 227(b) and does not refer to Section 227(c). *See Id*. The FCC order is therefore wholly inapplicable to Plaintiff's sole cause of action.

storage space, bandwidth, and wear and tear." CAC at ¶ 30. Stated another way, pleading that phone lines are "tied up" by the subject text messages ultimately undermines Plaintiff's claim that CDHA violated the TCPA. More simply, no ordinary person considers a text message to be the same as a telephone call. Given that Plaintiff's claim requires more than one "telephone call" for his private right of action, and he fails to plead same, Plaintiff's claim fails as a matter of law. Plaintiff's sole cause of action must therefore be dismissed pursuant to Rule 12(b)(6).

### 3. The Referenced Text Messages are Exempt as Non-Telemarketing Communications

As set forth herein, the TCPA does not apply to text messages. Assuming *arguendo* that Section 227(c) could be applied to text messages, the referenced messages would still be exempted.

#### i. The Referenced Text Messages do not Contain Advertisements

Pursuant to the TCPA, the FCC issued an exemption to calls made to residential lines that are made for a commercial purpose but do not include or introduce an advertisement or constitute telemarketing. *See* 47 C.F.R. § 64.1200(a)(3)(ii)-(iii)("no person or entity may [i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call...is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing"); *Savett v. Anthem, Inc.*, 2019 WL 5696973, *4 (N.D. Ohio Nov 4, 2019)(finding that, where the defendant's calls concerned flu shot reminders, e-mail collection and telehealth and online services, the defendant was at no point selling any product or using the calls as a pretext to sell a product in the future). "Advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of

encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

Customer-friendly and informative messaging does not equate to telemarketing or advertisement simply because the message is sent on behalf of an entity with a financial motivation. *See Smith v. Blue Shield of California Life & Health Ins. Co.*, 228 F.Supp.3d 1056, 1067-68 (finding that the defendant's call was informative and rejecting the plaintiff's argument that the defendant's message was telemarketing or advertising where the defendant had an overarching incentive to retain customers and receive premium payments because, otherwise, the court would be transforming "practically *all* communication from any entity that is financially motivates and exchanges goods or services for money into telemarketing or advertising, which would contravene the delineated definitions of telemarketing and advertising" in 47 C.F.R. § 64.1200).

As alleged by Plaintiff, the first text he received says, "[b]ook an appt that fits your family's availability," and the second text states, "[m]ake Lailynn's smile shine bright this summer! Let's get your kiddo scheduled for a check-up so they can head back to school with a clean, confident smile! Book an appointment here." CAC at ¶ 22. Both texts provide a link for scheduling, signature and opt-out option. *Id.* Facially, neither text contains an advertisement, and neither text encourages a purchase, rental of or investment in anything. *See id.* The texts are informative in that they remind an identified patient to schedule a pediatric dentist appointment, and the texts otherwise "lack[ed] the commercial components inherent in ads." *See Savett,* 2019 WL 5696973 at * 5 (internal quotation and citation omitted); *see also Smith*, 228 F.Supp. at 1066 (delineating between messages that do and do not reference commerce when determining whether messages have been deemed by courts to be telemarketing or advertising). Plaintiff himself identifies CDHA

as a pediatric dental provider, and the messages themselves identify a specific location in Downingtown, Pennsylvania directed to a specific individual. *See Id.* at ¶¶ 15, 22. The referenced CDHA messages provide informative messaging related to patient healthcare rather than advertisements related to a generalized marketing campaign. Accordingly, these messages are subject to the non-telemarketing exception.

>        ii.   The Referenced Text Messages are Subject to the Healthcare Exception

Similarly, the FCC has recognized a Healthcare Exception, finding that healthcare-related calls to residential landlines are exempt from any consent requirement. *See* 47 C.F.R. § 64.1200(a)(3)(v); *Latner v. Mount Sinai Health Sys.*, 2016 WL 10571897 at *2. Calls to wireless numbers where the call delivers a health care message made by, or on behalf of, a "covered entity" or "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 150.103, fall under the Healthcare Exception. *Id.*; *see* 47 C.F.R. § 64.1200(a)(2).

> HIPAA defines healthcare to include "care, services, or supplies related to the health of an individual." *See* 45 C.F.R. § 160.103 (defining "health care"). Furthermore, HIPPA exempts from its definition of marketing all communications that are made "[f]or treatment of an individual by a health care provider ... or to direct or recommend alternative treatments" to the individual. 45 C.F.R. § 164.501.

*Latner*, 2016 WL 10571897 at *2. In 2015, the FCC created an exemption from the prior express consent requirement for certain health care calls to cellular phones as well. *Zani v. Rite Aid Headquarters Corp.*, 246 F.Supp.3d 835, 851 (S.D. of NY 2017). The calls entitled to the exemption have an exigency and a healthcare treatment purpose, and the calls and text messages, which must comply with HIPAA privacy rules, are strictly limited to healthcare purposes such that they must not include any telemarketing, solicitation, or advertising, and may not include accounting, billing, debt-collection or other financial content. *Id.*

A health care message is entitled to the Healthcare Exception if it concerns a product or service that is inarguably health-related, if the message is by or on behalf of a health care provider to a patient with whom she has an established health care treatment relationship, and if the call concerns the individual health care needs of the patient recipient. *See Zani*, 246 F.Supp.3d at 851(finding that the defendant's flu shot reminder calls constituted health care messages).

Looking to the plain text of the text messages and the context in which the messages were sent—by CDHA, a "pediatric dental provider," and to the contact person on this pediatric dental patient's file—it is clear that the text messages sent on behalf of CDHA are not telemarketing but healthcare messages directed to a particular individual. *See* CAC at ¶ 15. These messages are akin to the flu shot reminder accepted by the *Zani* court- a targeted message related to the health care needs of a specific intended patient. These messages should therefore be viewed as subject to the healthcare exception.

### 4. The Referenced Text Messages Were Not Prohibited "Telephone Solicitations" Pursuant to the TCPA

47 C.F.R. § 64.1200(c) states that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." 47 C.F.R. § 64.1200(c)(2). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services." 47 C.F.R. § 64.1200(15). A message that qualifies as a "telephone solicitation," therefore, must have the purpose of persuading a person to pay for certain services, and it is not enough that a message is meant to persuade a person to use certain services. *See Hulce v. Zipongo, Inc.,* 132 F.4th 493, 501 (7th Cir. 2025) (noting that "encouraging the purchase" is narrower than a general "commercial purpose"). Moreover, a general economic incentive does not give rise to a reasonable inference

of a specific purpose to encourage the purchase of a service. *Trujillo v. Free Energy Savings Co.*, LLC, 2020 WL 7768722, *3 (C.D. of Ca Dec. 21, 2020) (finding that, when resolving the question of what constitutes a "telephone solicitation" under the TCPA, the purpose of a message is a question of fact determined by the content and context of the call or message).

Applying interpretations of "telephone solicitation" here, Plaintiff fails to plead that the text messages at issue meet the definition of a "telephone solicitation." The first text says, "[b]ook an appt that fits your family's availability," and provides a link, signature and opt-out option. CAC at ¶ 22. The second text states, "[m]ake Lailynn's smile shine bright this summer! Let's get your kiddo scheduled for a check-up so they can head back to school with a clean, confident smile! Book an appointment here," and provides a link, signature and opt-out option. *Id.* Plaintiff alleges that the purpose of the text messages "was to solicit business for [CDHA's] practice." *Id.* at ¶ 24. However, Plaintiff's allegation falls short of etablishing a "telephone solicitation" as defined by the TCPA.

The plain text of the text messages demonstrates that CDHA does not encourage a "purchase." Offering a way to schedule a necessary medical appointment does not constitute a "telephone solicitation." Additionally, a general economic incentive—or soliciting "business," as plead by Plaintiff—falls short of the specific purpose of purchase required by the TCPA for a text message to be deemed a "telephone solicitation." For these reasons, Plaintiff fails to state a plausible claim as defined by 47 C.F.R. § 64.1200(c).

### 5. Plaintiff Lacks Standing to Bring a Claim for Injunctive Relief

Plaintiff's Complaint includes a demand for injunctive relief. Plaintiff has however failed to establish standing for injunctive relief. The jurisdiction of federal courts is limited to "actual, ongoing '[c]ases' and '[c]ontroversies." *Keitel v. Mazurkiewicz,* 729 F.3d 278, 279 (3d Cir. 2013)

(quoting U.S. Const. art. III, § 2. "To establish standing, 'a party seeking relief [must] allege personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Purpura v. Sebelius*, 446 Fed.Appx. 496, 497 (3d Cir. 2011) (quoting *Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 389 (3d Cir. 1999)). In a putative class action, the named plaintiff must personally establish standing under Article III. *See Warth v. Seldin*, 422 U.S. 490, 501-02, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). When a plaintiff seeks prospective relief, he must show that he is "likely to suffer future injury" as a result of the defendant's ongoing conduct. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3rd Cir. 2012)(internal quotation omitted). To preserve the role of the judiciary, "a federal court may only resolve 'a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez,* ____ U.S. ____, 141 S.Ct. 2190, 2203, 210 L.Ed.2d 568 (2021) citing *American Legion v. American Humanist Assn.,* 588 U.S. ----,---, 139 S.Ct. 2067, 2103, 204 L.Ed.2d 452 (2019). A purported injury in fact must "be 'concrete'- that is, 'real and not abstract.'" *TransUnion*, 141 S.Ct. at 2204. An alleged breach of duty or statute alone does not give rise to a concrete injury. "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S.Ct. at 225 quoting *Casillas v. Madison Avenue Assocs., Inc.,* 926 F.3d 329 (7th Cir. 2019). A plaintiff cannot simply rely on past exposure to illegal conduct when seeking injunctive relief, and injunctive relief cannot automatically be granted whenever a statutory violation is found. *See Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149 at * 6.,

"As the party invoking federal jurisdiction, the [plaintiff] bear[s] the burden of demonstrating that they have standing." *TransUnion,* 141 at 2207-08, citing *Lujan v, Defenders of Wildlife,* 504 U.S. 555, 561 (1992) Plaintiffs must establish standing for each claim raised and

each form of relief sought. *See Id.* at 2208. As standing is a matter of jurisdiction, a defendant may challenge jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Plaintiff fails to plead any threat of future harm and merely pleads a statutory violation to justify his claim for injunctive relief. *See* CAC at ¶ 54. He provides no basis that a risk of a future text message from CDHA exists. Indeed, Plaintiff has alleged that he last received a text message from CDHA in June of 2025 when CDHA apparently ceased communications to that phone number at his request. *See* ¶ CAC at 22. Accordingly, Plaintiff's claim for injunctive relief must be dismissed for lack of standing.

## IV.     CONCLUSION

The TCPA may be a powerful and prolific tool; that said, this statute should not be used as a blunt instrument where it simply does not fit. For the foregoing reasons, CDHA respectfully requests that this Court dismiss Plaintiff's CAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**CIPRIANI & WERNER, P.C**.

  /s/Jill H. Fertel_____

Jill H. Fertel
Sarah K. Adams
Cipriani & Werner
450 Sentry Parkway, Ste. 200
Blue Bell, PA 19422
Phone: (610) 567-0700
Fax: (610) 567-0712
jfertel@c-wlaw.com
sadams@c-wlaw.com
*Attorneys for Defendant Children's Dental Health Associates, LLC*