IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated, | : : : : : |
| Plaintiff, | : Case No. 2:25-cv-05238-JFM : : CLASS ACTION |
| v. | : : |
| CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC, | : MOTION TO DISMISS : CLASS ACTION COMPLAINT : : |
| Defendant. | : : |

**DEFENDANT CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC, BRIEF IN RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(1) AND 12(b)(6)**

I. **INTRODUCTION**

Before the Court is Defendant Children's Dental Health Associates, LLC's ("CDHA") Motion to Dismiss Plaintiff Jourey Newell's ("Plaintiff") Class Action Complaint. On December 7, 2025, Plaintiff submitted her Response in Opposition ("Opp.") [Dkt. # 21]. CDHA submits the following Reply in Further Support of its Motion to Dismiss Plaintiff's Complaint.[1]

II. **ARGUMENT**

    a. **Section 227(c)(5) does not Regulate Text Messages**

---

[1] CDHA incorporates its Motion to Dismiss by reference and restates its arguments here. This Reply is limited in scope and should not be construed as a waiver of any argument set forth in CDHA's Motion.

In 1991, when the United States Congress passed the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, text messages did not exist. By 2018, however, text messages were a fixture of our society and the TCPA was amended accordingly.

In 2024, the United States Supreme Court held that the interpretation of the meaning of statutes is exclusively a judicial function, such that deferential review to agencies otherwise empowered by a particular statute is "cabined to factbound determinations." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 388-89 (2024). The Court does not extend similar deference to agency resolutions regarding questions of *law*. *Id.* (emphasis in original). And so, "[i]n civil enforcement proceedings under the Telephone Consumer Protection Act, are district courts bound by the Federal Communications Commission's interpretation of the Act? The answer is no." *McLaughlin Chiropractic Assoc., Inc., v. McKesson Corp., et al.*, 606 U.S. 146, 149 (2025). *McLaughlin* directs trial courts instead to interpret the prohibitions of the TCPA using ordinary statutory construction. *Id.* at 155. Plaintiff concedes since the *McLaughlin* decisions, district courts have been divided in their interpretation of Section 227(c) and its application, or lack thereof, to text messages. *See* Opp. at 4. Plaintiff suggests that "[m]odern parlance can be misleading as times change." *Id*. And while it is true that that text messaging was not available in 1991 at the time of the TCPA's passage, the TCPA has since been modernized to incorporate the text messaging. Plaintiff ignores this fact.[2]

Importantly, Congress *has* amended subsection Section 227 of the TCPA. In 2018, Congress passed the Consolidated Appropriations Act, 2018 ("2018 Amendment"), which, in

---

[2] Plaintiff's analogy to a prohibition related to cars including both sedans and cybertrucks is baffling. A more apt analogy would be determining whether a prohibition related to cars regulated the use of rockets- both are arguably forms of transportation, but they are clearly not the same thing.

pertinent part, modified the TCPA. The 2018 Amendment defined the term "text message" and incorporated the term as part of the prohibitions of Section 227(e) of the TCPA. In doing so, Congress prohibited the use of a "voice service or a text message sent using a text messaging service" in connection with providing misleading or inaccurate caller identification information. PL 115-141, March 23, 2018, 132 Stat 348, Sec. 503. Congress did not incorporate the term "text message" in any other prohibition of the TCPA.

The 2018 Amendment incorporates the modern understanding of telephone use and communication, including the prevalent use of text messaging and yet, *Congress did not incorporate the term "text message" in the prohibitions set forth in Section 227(c)*. The private right of action created by Section 227(c) remains limited to those "who [have] received more than one telephone **call** . . . ." and not more than one text message. 47 U.S.C. § 227(c)(5) (emphasis added). Congress did not provide a reason for the distinction- indeed, Congress "could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the later." *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 at *3 (N.D. Fl Aug. 26, 2025). In any event, Congress made a deliberate decision to amend the language in Section 227(e) to incorporate text messaging and elected not to include a similar amendment in the prohibitions of Section 227(c).

Plaintiff's assertion that the definition of "calls" encompasses the term "text messages" flies in the face of statutory construction. "Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible." *Morgan v. Gay*, 466 F.3d 276, 278 (3d Cir. 2006). The plain meaning of the terms "call" and "text message" are "entirely different", therefore a plain reading of Section 227(c)establishes that it

3

"does not regulate text messages." *Jones v. Blackstone Med. Servs.*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025).

"[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) (quoting *Fernandez v. Seaboard Marine Ltd.,* 135 F.4th 939, 958) (11th Cir. 2025) (additional citations omitted). Were the term "calls" inclusive of "text messages", Congress's 2018 Amendment to include the term text message superfluous. A simple comparison of the language ins Section 227(c) referring to "more than one telephone call" with the definitional language in Section 227(e) distinguishing "**a call** made using a voice service **or a text message sent using a text messaging service**" is illustrative. 47 U.S.C. §§ 227(c)(5); 227(e)(8)(A), (B) (emphasis added). Had Congress intended for the word "call" to incorporate text messages, Congress would not have made the distinction. Congress used different words as the words "call" and "text" do indeed hold different meanings.[3] Simply stated, Section 227(c) provides a private right of action for one "who has received more than one telephone call" – not more than one text message, not more than one telephone solicitation: *one phone call*. 47 U.S.C. 227(c)(5). We are constrained by the plain meaning of the deliberate language chosen by the legislative branch.

Plaintiff asks the Court to continue to rely on the interpretations of the FCC. *See* Opp. at 14. As noted by the district court in *Blackstone*:

---

[3] Plaintiff's reference to the "autodialer provisions" of Section 227(b) are similarly unavailing. *See* Opp. at 4. The plain meaning of a "call" to a pager is distinct from a text message to a phone. Pagers still exist and persist in our technological landscape as calls to a pager serve a different purpose than text messages.

4

> "[An Agency's] expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade, if lacking power to control'" While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes "telephone call" and does not mention text messages or SMS messages, and nowhere does the TCPA define "telephone call" to include txt and/or SMS messages."

*Blackstone*, 792 F. Supp. at 901. "In the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible." *Id.* (quoting *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 400 (2024). A statutory interpretation that expands a cause of action for policy considerations is simply not permissible.

Policy decisions and expansions of statutory liability are for the legislature. *See Nat'l Fed. Of Ind. Business v. Sebelius*, 567 U.S. 519, 538 (2012). Plaintiff effectively asks this Court to ignore the deliberate decisions of the legislative branch, effectively expanding statutory liability beyond that imposed by Congress. The only plain interpretation of Section 227(c)(5) is one that does not regulate text messages.

### b. The Referenced Messages are not Telephone Solicitations

Assuming *arguendo* that Section 227(c) could be applied to text messages, the referenced messages would still be exempted because a message is not a telephone solicitation under the TCPA simply because the message is sent on behalf of an entity with a financial motivation, which Plaintiff appears to argue is sufficient. A message that qualifies as a "telephone solicitation" must have the purpose of persuading a person to *pay* for certain services, and it is not enough that a message is meant to persuade a person to *use* certain services. *See Hulce v. Zipongo, Inc.,* 132 F.4th 493, 501 (7th Cir. 2025) (noting that "encouraging the purchase" is narrower than a general

5

"commercial purpose," even acknowledging that a health plan may ultimately pay for a service if used).

Plaintiff cites *Michigan Urgent Care & Primary Care Physicians, P.C. v. Medical Sec. Card Co.,* for the proposition that, where a "nearly identical scheme" took place, the Court in *Michigan Urgent Care* found a fax to be a "telephone solicitation." 2020 WL 7042945 at *2-3 (E.D. Mich. November 30, 2020). To the contrary, *Michigan Urgent Care* was determined to be factually distinguishable from a Sixth Circuit case, *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015), on the key difference that the promotion in *Michigan Urgent Care* was designed to attract clients or customers. *Id.* However, in the instant case, and like *Sandusky*—which held the fax at issue there was *not* a telephone solicitation—the text messages at issue were *not* trying to attract new clients or customers, which is facially evident from the text messages themselves. *See* 788 F.3d at 222.

The text messages at issue here are similarly distinguishable from the fax in *Mills Cashway Pharm,, Inc., v. Change Healthcare, Inc.*, on which Plaintiff also purports involves a "nearly identical scheme" to the case at hand. In *Mills Cashway Pharm.*, the court evaluated a fax message advertising a discount for a larger prescription plan to determine whether the purpose of the communication was to provide information to a user or to sell a product. 2025 WL 1085816 at *6 (M.D. Ten. April 10, 2025). By contrast, here, the informational purpose of the subject text messages *is clear* by the face of the messages as plead: the factual content of the text messages, including the name of the intended patient—the inclusion of her name as evidence that a prior relationship existed—is specifically plead.[4] The instant matter is more akin to *Zani v. Rite Aid*

---

[4] Importantly, any argument by Plaintiff in Plaintiff's Opposition that the text messages at issue were a "pretext" for commercial solicitation should be flatly rejected as the Third Circuit has not

6

*Headquarters Corp.*, 246 F.Supp.3d 835, 851 (S.D. NY 2017) (finding that the defendant's flu shot reminder calls constituted health care messages).

### c. Plaintiff has Failed to Establish Standing for Injunctive Relief

Plaintiff bears the burden in showing he has standing for injunctive relief. *See TransUnion LLC v. Ramirez,* 594 U.S. 413, 430-31 (2021). He must show that he is "likely to suffer future injury" as a result of the defendant's ongoing conduct. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3rd Cir. 2012) (internal quotation omitted). Moreover, in a puntive class action, a named plaintiff must personally establish standing. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975). It is not sufficient to suggest that other members of a putative class may have standing; a plaintiff who fails to allege standing individually is not qualified to seek relief on behalf of the proposed class. *See Id.*

This precise issue has been considered recently within the Third Circuit; in *Bradshaw v. CHW Group, Inc.,* the District of New Jersey reasoned that prospective injunctive relief is not warranted where "the allegations in the Complaint are in no way forward-looking." 763 F. Supp. 3d 641, 645 (D. N.J. 2025) (holding that where the plaintiffs allegations did not include recent or ongoing communications from the defendant, the plaintiff lacked standing to pursue injunctive relief pursuant to the TCPA); *see also Doyle v. Matrix Warranty Sols., Inc.*, 679 F. Supp. 3d 42 (D. N.J. 2023). Other district courts have reached a similar conclusion. *See e.g. Martin v. Bottom Line Concepts, LLC,* 723 F. Supp. 3d 270, 281 (S.D. N.Y. 2024)(finding allegations of prior calls do not support the proposition of further calls in the future and therefore lack standing for

---

endorsed the "pretext theory" with respect to the TCPA. *Robert W. Mauthe*, *M.D., P.C. v. Optum, Inc.*, 925 Fed 129, 135 (3d Cir. 2019).

injunctive relief); *Blair v. Assurance IQ LLC,* 2023 WL 6622415(W.D. Wash. Oct. 11, 2023); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237 (S.D. Fla. 2019).

Contrary to Plaintiff's suggestion in Plaintiff's Response, Plaintiff did not allege in his Complaint that CDHA continued messaging Plaintiff after his cease-and-desist request. Any suggestion to the contrary is unsupported. Plaintiff's claim of two text messages to a number on the DNC Registry, the violation at issue, further distinguish this matter from other matters involving automatic telephone dialing systems and where repeated violations have been shown. *See, e.g., Snyder v. Ocwen Loan Servicing, LLC*, 258 F.Supp.3d 893, 900 (N.D. Ill. 2017). Plaintiff has failed to sufficiently plead any threat of future violations.

### III. CONCLUSION

For the foregoing reasons, CDHA respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice for failure to state a claim under Rule 12(b)(6) and Rule 12(b)(1).

          Respectfully submitted,

          **CIPRIANI & WERNER, P.C**.

          */s/ Jill H. Fertel*

          Jill H. Fertel
          Sarah K. Adams
          Cipriani & Werner
          450 Sentry Parkway, Ste. 200
          Blue Bell, PA 19422
          Phone: (610) 567-0700
          Fax: (610) 567-0712
          jfertel@c-wlaw.com
          sadams@c-wlaw.com
          *Attorneys for Defendant Children's Dental Health Associates, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated, : : : : | |
|  | Case No. 2:25-cv-05238-JFM |
| Plaintiff, : | CLASS ACTION |
| v. : | |
| : | CERTIFICATE OF SERVICE FOR |
| CHILDREN'S DENTAL HEALTH : | BRIEF IN RESPONSE TO |
| ASSOCIATES, LLC, : | PLAINTIFF'S OPPOSITION TO |
| : | DEFENDANT'S MOTION TO |
| Defendant. : | DISMISS PLAINTIFF'S CLASS |
| : | ACTION COMPLAINT |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of December 2025 a true and correct copy of the Defendant's Brief in Response to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint was filed with the Clerk of Court via the Court's CM/ECF System for electronic service on all counsel of record.

Dated:  December 15, 2025         */s/ Jill H. Fertel*
                                   Jill H. Fertel, Esquire
                                   Cipriani & Werner PC
                                   *Attorney for Defendant*

9