# *EXHIBIT A*

2026 WL 456919
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Ethan RADVANSKY, on behalf of himself
and others similarly situated, Plaintiff,
v.
1-800-FLOWERS.COM, INC., Defendant.

CIVIL ACTION FILE NO. 1:25-CV-2811-TWT
|
Signed February 17, 2026

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, Valerie Lorraine Chinn, Chinn Law Firm, LLC, Atlanta, GA, for Plaintiff.

Jeffrey Allen Zachman, Leanne Elizabeth Sunderland, Mark Adam Silver Dentons US, LLP, Atlanta, GA, for Defendant.

### OPINION & ORDER

THOMAS W. THRASH, JR., United States District Judge

 **\*1** This is an action under the Telephone Consumer Protection Act ("TCPA"). It is before the Court on the Defendant 1-800-Flowers.com, Inc.'s Motion to Dismiss [Doc. 14]. For the following reasons, the Defendant's Motion to Dismiss [Doc. 14] is GRANTED.

### I. Background [1]

This action arises from text messages the Plaintiff alleges he received from the Defendant without his consent. (Compl. ¶¶ 12-13). The Plaintiff's phone number is his "personal residential telephone number," and it has been registered on the National Do Not Call Registry ("DNC") since 2015. (Id. ¶¶ 8-11). The text messages were intended for someone other than the Plaintiff, and the purpose of the messages was to advertise the Defendant's flower business. (Id. ¶¶ 14-15). The Plaintiff did not give the Defendant "prior express consent or permission to deliver, or cause to be delivered, advertisement or marketing text messages" to his telephone number. (Id. ¶ 16). As a result, the Plaintiff alleges that he "suffered an invasion of privacy, an intrusion into his life, and a private nuisance." (Id. ¶ 18).

The Plaintiff seeks to certify a representative class as follows:

> **National Do Not Call Registry Class:**
> All persons throughout the United States (1) who did not provide their telephone number to the Defendant, (2) to whom the Defendant delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting the Defendant's goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before the Defendant delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) who did not submit their telephone number to the Defendant, (5) within four years preceding the date of this complaint and through the date of class certification.

(Id. ¶ 20). The Plaintiff alleges that his claims and the class members' claims originate from the same conduct, practice, and procedure of the Defendant and are based on the same theories. (Id. ¶¶ 28-29). The Defendant moved to dismiss the sole Count in the Plaintiff's Complaint, which alleges a violation of 47 U.S.C. § 227(c)(5) via 47 C.F.R. § 64.1200(c). (Id. ¶¶ 48-56); [Doc. 14]. This Motion is presently before the Court.

### II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote

and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

**\*2**  The Defendant argues that the Plaintiff's claim fails for three reasons: (1) the Plaintiff is not a "residential telephone subscriber" as that phrase is defined in the TCPA; (2) even if he is, 47 U.S.C. § 227(c)(5) does not apply to text messages; and (3) the Plaintiff has not plead facts suggesting that the Defendant "willfully" or "knowingly" violated the TCPA, to support his treble damages claim. (Def.'s Mot. to Dismiss, at 4-17). It also contends that the Plaintiff fails to demonstrate an imminent threat of future harm that would justify injunctive relief. (*Id.* at 17-19). And in the alternative, the Defendant asserts that the class allegations should be dismissed because the proposed class's claim here does not involve an issue of common proof, since whether each subscriber's phone number is residential and whether individual numbers were registered on the DNC would be a member-specific, fact intensive inquiry. (*Id.* at 19-25). The Court will address each argument in turn.

### A. Whether the Plaintiff is a "Residential Telephone Subscriber" Under the TCPA

The Defendant argues that the Plaintiff's cellphone is not considered a "residential telephone" under the TCPA. In support of this argument, the Defendant notes that courts in the Eleventh Circuit previously deferred to the FCC's interpretation in determining that cellphones are residential telephones, but that the legal landscape has now changed in the wake of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). (Def.'s Mot. to Dismiss, at 5-13). Under the *Loper Bright* decision, the

Defendant argues, the Court is bound by the TCPA's language at the time it was enacted, which was not meant to cover cellphones. (*Id.* at 7-9). The Plaintiff responds that, even post *Loper Bright*, cellphones are considered residential telephones because the use of the phrase "residential" was simply meant to distinguish personal or household use of a telephone from business use. (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 5-7).

Under 47 U.S.C. § 227(c)(5), "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [the TCPA]" may bring an action based on such violations. The TCPA, in turn, prohibits any person or entity from initiating a telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). The question of whether the term "residential subscriber" included cellphone users was settled law prior to the Supreme Court's *Loper Bright* decision and, more recently, *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). In *McLaughlin*, the Supreme Court reiterated *Loper Bright*'s holding that district courts are not bound by an agency's interpretation of a statute and instead must apply ordinary principles of statutory interpretation while "affording appropriate respect to the agency's interpretation." *McLaughlin Chiro. Assocs., Inc.*, 606 U.S. at 155. But it further held that the Hobbs Act does not preclude district courts from disagreeing with the FCC's interpretations of the TCPA. *Id.* at 168 ("The District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

Post-*McLaughlin*, courts have been left to decide whether "residential telephone subscribers" includes cellphone users. In *Isaacs v. USHealth Advisors, LLC*, Chief Judge May held that it does, relying on the definitions of subscriber and residence in the Oxford and Black's Law dictionaries. 2025 WL 2268359, at \*2-3 (N.D.Ga. Aug. 7, 2025). Putting these definitions together, Chief Judge May concluded that "a residential subscriber is a person who uses their phone for activities associated with their private, domestic life." *Id.* at \*3. The Court further noted that this interpretation of "residential subscriber" aligned with the TCPA's purpose of "protect[ing] residential privacy." *Id.* at \*4 ("Regardless

of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same."). The result of the defendant's proposed interpretation, Chief Judge May found, was that these residential privacy interests would be tied "to an obsolete and disappearing phone technology"—a home landline. *Id.* Judge Jones found similarly in *Radvansky v. Bubolo Medical, LLC*, explaining that "the type of technology —i.e., cellular or landline—is not determinative" of the issue; instead, the plaintiff's purpose for using the phone line is. 2025 WL 3306417, at *2 (N.D.Ga. Aug. 15, 2025) (noting that the plaintiff had alleged he used his cellphone for personal rather than business or commercial purposes). And Judge Totenberg recently came to the same conclusion in *Loudermilk v. Maelys Cosmetics USA, Inc.*, 2025 WL 3625779, at *2-3 (N.D.Ga. Dec. 11, 2025). The Court here joins the Northern District of Georgia bench in holding that the term "residential telephone subscriber" includes cellphone users. As Judge Totenberg aptly stated, "[t]he reality is that most individuals today utilize cell phones as the primary, and sometimes only, telephone in their residence. If the TCPA were to only apply to a landline user but not a cell phone user, a tremendous number of individuals' privacy interests would remain unprotected." *Loudermilk*, 2025 WL 3625779, at *3. Surely, that cannot be the result Congress intended.

**\*3** Here, the Plaintiff alleged that he was the regular and sole user of the telephone number at issue prior to the time the Defendant allegedly sent the offending text messages at issue here. (Compl. ¶ 8). He also alleged that he at all times used the telephone number "as his personal residential telephone number" and that he has not used it for business or commercial purposes. (*Id.* ¶¶ 8-9). Therefore, the Court finds that the Plaintiff has properly alleged he is a residential telephone subscriber under 47 C.F.R. § 64.1200(c)(2). "As such, the fact that the solicitations to a telephone number on the do-not-call registry came to a cellular telephone does not preclude Plaintiff's claim for a violation of the TCPA." *Radvansky*, 2025 WL 3306417, at *2. Accordingly, the Defendant's Motion to Dismiss will be denied on this ground.

### B. Whether 47 U.S.C. § 227(c)(5) Applies to Text Messages

Next, the Defendant argues that even if the Plaintiff is considered a residential telephone subscriber under the TCPA, the text messages he received are not actionable because the TCPA applies only to telephone calls post-*McLaughlin*. (Def.'s Mot. to Dismiss, at 13-15). The Plaintiff asserts that

nearly every court to have considered this issue has found that text messages are "telephone calls" as that term is defined under the TCPA and that this Court should follow suit. (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 7-30).

By its plain language, 47 U.S.C. § 227(c)(5) applies to "telephone call[s]," and prior to *Loper Bright*, it was settled law that telephone calls included text messages based on a 2003 FCC order to that effect. *See* 18 FCC Rcd. 14014, 14116 para. 165 (2003). But *McLaughlin* upended this issue by relying on *Loper Bright* to hold that "[d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiro. Assocs., Inc.*, 606 U.S. at 155. And in *Loper Bright*, the Supreme Court reiterated its precedent that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters.*, 603 U.S. at 400.

This sea change in the legal landscape has left district courts to decide, with fresh eyes, whether § 227(c)(5)'s reference to "telephone call[s]" also encompasses text messages. Thus far, courts have been split on the issue. The three district courts in this Circuit that have addressed the issue have each concluded that the phrase "telephone call" in § 277(c)(5) does not include text messages, and this Court will follow suit. *See Radvansky v. Kendo Holdings, Inc.*, 3:23-cv-00214-LLM, slip op. at 3-7 (N.D.Ga. Feb. 12, 2026); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D.Fla. Oct. 24, 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272-73 (N.D. Fla. 2025).

Statutory interpretation must "start with the text"—and, if the text is clear, the analysis "end[s] there as well." *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818-19 (11th Cir. 2020). The statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages. As one district court noted, "in common American English usage, a telephone call and a text message are separate and distinct forms of communication." *Sayed*, 2025 WL 2997759, at *2. True, the meaning of these terms should be considered as they were understood at the time the TCPA was enacted, prior to the invention of text messages. *See Loper Bright Enters.*, 603 U.S. at 400. But "[w]here the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998). And

as Judge May aptly pointed out, Congress has amended the TCPA as recently as 2019 to add the phrase "text message" in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended. *Radvansky*, 3:23-cv-00214-LLM, slip op. at 6. This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls because "when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025) (citation modified).

**\*4** This same concept defeats the Plaintiff's argument that elsewhere in the TCPA, "telephone solicitations" refers to both calls and text messages, so "telephone call" in § 227(c)(5) must refer to both, too. *See, e.g.*, 47 U.S.C. § 227(c)(1). But construing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage. *Sunshine State Reg'l Ctr.*, 143 F.4th at 1343 ("The canon against surplusage means we read statutes in a way that if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation modified)). Likewise, "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position" because "[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 797 F. Supp. 3d at 1274.

The Plaintiff relies on the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) and a host of other either pre-*McLaughlin* or wholly irrelevant decisions in support of his position that text messages qualify as telephone calls under § 227(c)(5). As the *Davis* court noted, the Supreme Court assumed but did not actually decide that issue in *Campbell-Ewald* and did not address the "telephone call" language at issue in § 227(c)(5) but the broader prohibition on "any call" in § 227(b)(1)(A)(iii). *Campbell-Ewald*, 577 U.S. at 156. The Plaintiff's reliance on *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) is entirely misplaced because that case addressed only whether an unwanted text message was sufficiently injurious to confer Article III standing, again in the context of § 227(b)(1)(A)(iii). *Drazen*, 74 F.4th at 1345. Likewise, *Insurance Marketing Coalition Limited* v. FCC, 127 F.4th 303 (11th Cir. 2025) is irrelevant because it dealt with interpreting "prior express consent" in § 227(b)(1).

The Plaintiff's last argument urges the Court to rely on the 2003 FCC order concluding that text messages constitute telephone calls under the TCPA, asserting that *Loper Bright* permits such reliance because Congress expressly delegated to the FCC the authority "to give meaning to a particular statutory term" in this case and to "fill up the details of [the] statutory scheme." *See Loper Bright*, 603 U.S. at 395 (citation modified). As one district court noted, this delegation did not authorize the FCC to determine that "telephone call" includes text messages:

> That would not be "filling up the details." Determining whether "telephone call" in § 227(c)(5) includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details." In actuality, § 227(c)(1)(E) may run afoul of the nondelegation doctrine, since there are no delimitations on the discretion it grants the Commission.... we [thus] reject Plaintiff's request that we use § 227(c)(1)(E) to resurrect *Chevron* out of the grave. § 227(c)(1)(E) does not require this Court to defer to the Commission's interpretation of § 227(c)(5). And we remind Plaintiff that "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright*, 603 U.S. at 373.

*McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at \*2 (S.D.Fla. Jan. 15, 2026).

Finally, the Court is not persuaded by the several district court decisions the Plaintiff provides concluding that "telephone call" in § 227(c)(5) does include text messages because the reasoning underlying these decisions is inherently flawed. For example, in *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026), the district court acknowledged that "no ordinary person would use the word 'telephone call' to refer to a text message" before concluding that "a usage which seems obvious now is not always a reflection of the original meaning of the statute," even though text messages did not yet exist when the statute was originally enacted. *Alvarez*, 2026 WL 202930, at \*4. In *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, (N.D. Cal. Oct. 7, 2025), the district court reached beyond the statute's plain text to find support for its conclusion in a 2024 edition of Black's Law dictionary, which defies both the first rule of statutory interpretation and *Loper Bright*'s instruction that a statute's meaning is fixed at the time of enactment. *Wilson*, 2025 WL 2856295, at \*2; *Young*, 980 F.3d at 818-19; *Loper Bright Enters.*, 603 U.S. at 400. And in *Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025), the district court's conclusion that "interpreting §

Case 2:25-cv-05238-JFM    Document 24-1    Filed 04/06/26    Page 6 of 6

227(c) to include text messages is consistent with the text of § 227 as a whole" ignores the meaningful-variation canon —the idea that Congress must have intended distinct words in a statute to have different meanings. *Mujahid*, 2025 WL 3140725, at *2; *Sunshine State Reg'l Ctr., Inc.*, 143 F.4th at 1344. *Wilson v. Better Mortgage Corp.*, 2025 WL 3493815 (S.D.NY Dec. 5, 2025) applied similarly faulty reasoning.

**\*5** For all of these reasons, the Court agrees with the decisions in this Circuit concluding that the phrase "telephone call" in 47 U.S.C. § 227(c)(5) does not encompass text messages. Because the Plaintiff pled only that the Defendant violated 47 U.S.C. § 227(c)(5) through sending text messages in violation of 47 C.F.R. § 64.1200(c), his claim fails as a matter of law. As a result, his class allegations likewise fail.

Accordingly, the Court will grant the Defendant's Motion to Dismiss [Doc. 14].

### IV. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 14] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and to close the case.

SO ORDERED, this 17th day of February, 2026.

**All Citations**

Slip Copy, 2026 WL 456919

---

### Footnotes

1       The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.