# *EXHIBIT C*

Case 2:25-cv-05238-JFM    Document 24-3    Filed 04/06/26    Page 2 of 6
WARREN RICHARDS on behalf of himself and others similarly..., Slip Copy (2026)
2026 WL 847568

2026 WL 847568
Only the Westlaw citation is currently available.
United States District Court, S.D.
Indiana, Indianapolis Division.

WARREN RICHARDS on behalf of himself
and others similarly situated, Plaintiff,
v.
FASHION NOVA, LLC, Defendant.

No. 1:25-cv-01145-TWP-MKK
|
03/26/2026

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**\*1** This matter is before the Court on Defendant Fashion Nova, LLC's ("Defendant"), Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 15). Plaintiff Warren Richards ("Richards") initiated this putative class action against Defendant under 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA") after receiving unsolicited text messages from Defendant, despite his cell phone number being on the national "Do Not Call" Registry. Defendant moves to dismiss Richards' Complaint on the premise that a text message is not a "telephone call" for purposes of establishing a violation of § 227(c)(5). For the reasons explained below, Defendant's Motion to Dismiss is **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Richards as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Richards registered his cell phone number on the Do Not Call Registry on March 25, 2025 (Filing No. 1 ¶ 15). In May and June 2025, Defendant sent marketing text messages to Richards' cell phone number without his consent. *Id.* ¶¶ 16–22. Richards now brings suit under § 227(c)(5) of the TCPA, which, in short, creates a private right of action for persons who have received more than one unsolicited "telephone call" within a 12-month period. Defendant moves to dismiss Richards' claims, arguing solely that a text message is not a "telephone call," so Richards has no claim under § 227(c)(5). The parties have fully briefed the Motion to Dismiss and filed several notices of supplemental authority, and the parties presented oral argument on March 10, 2026 (Filing No. 60). The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

**\*2** This case turns on a single issue: whether a text message is a "telephone call" under § 227(c)(5) of the TCPA. Richards

argues it is, and Defendant argues it is not. For many years, most courts assumed that a text message is a "telephone call" because the Federal Communications Commission ("FCC") said so, and the FCC was entitled to deference. But in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the United States Supreme Court held that courts may not defer to agencies to interpret ambiguous statutes, and in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Supreme Court further held that courts are not bound by the FCC's interpretation of the TCPA. These two decisions prompted a flood of lawsuits seeking judicial interpretations of "telephone call" under § 227(c)(5). The results are split, and the Seventh Circuit has not yet resolved this issue. [1] Both parties' positions are supported by persuasive arguments and authority, but ultimately, the Court agrees with Defendant.

"Voluminous consumer complaints about abuses of telephone technology...prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012). To help curb these abuses, in 1991, the TCPA created private causes of action. Section 227(c)(5) provides:

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may...bring [an action] in an appropriate court of that State ....to enjoin such violation...for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or . ..both such actions.

47 U.S.C. § 227(c)(5) (emphasis added). One of the TCPA's implementing regulations further provides that "[n]o person or entity shall initiate any telephone solicitation to...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

Section 227(c)(5) does not define "telephone call," so the Court must independently determine its meaning. *McLaughlin*, 606 U.S. at 155. In making that determination,

the Court must begin with the statutory text. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "Unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.' " *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). As Defendant points out, text messaging did not exist when the TCPA was enacted in 1991, so "telephone call" would not have included text messages. *See id.* ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted."); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 25-cv-5092, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. July 21, 2025). Likewise, the 1990 edition of Webster's Dictionary defined "call" as "the act of calling on the telephone," and defined "telephone" as "an instrument for reproducing *sounds* at a distance." Merriam-Webster New Collegiate Dictionary (9th ed. 1990) (emphasis added). *Loper Bright*, 603 U.S. at 400 ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis deleted))). A plain reading of § 227(c)(5) therefore supports Defendant's position that under a plain reading of § 227(c)(5), "telephone call" does not mean text messages. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)); *Melvin*, 948 F.3d at 852 ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

**\*3** Richards argues that even though text messaging had not yet been invented, the "ordinary, contemporary, common meaning" of the word "call" in 1991 was broader than Defendant suggests and instead means " 'to communicate with or try to get into communication with a person by a telephone.' " (Filing No. 31 at 11 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953– 54 & n.3 (9th Cir. 2009))). [2] Richards is correct that the nonexistence of text messaging in 1991 is not necessarily dispositive; "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wis. Central Ltd.*, 585 U.S. at 284 (explaining, for example, that although "money" may always mean "medium of exchange," "what qualifies as a 'medium of exchange' may depend on the facts of the day"). However, "telephone calls" (as of 1991) and text messages are different in several important ways. *In re Erickson*, 815 F.2d

1090, 1092 (7th Cir. 1987) ("A statutory word of description does not designate a particular item...but a class of things that share some important feature."). Most notably, telephone calls involve the use of sounds and a voice. *See Telephone*, Merriam-Webster New Collegiate Dictionary (9th ed. 1990). And a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line. *Cf. Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) ("Congress found autodialer technology...threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.' Indeed...autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees." (citation omitted)). As such, this Court finds that text messages do not present the same type of nuisance that phone calls do and concludes that a text message is not merely a "new application" of § 227(c)(5). *Wis. Central Ltd.*, 585 U.S. at 284.

Another textual clue confirms that "telephone call" does not mean text message—namely, § 227(c)'s use of "telephone call" to describe a right of action but "telephone solicitations" to describe an affirmative defense. 47 U.S.C. § 227(c)(5). The TCPA defines "telephone solicitation" for purposes of § 227 as "the initiation of a telephone call *or* message,"[3] indicating that "telephone call" does not also include "telephone message[s]." § 227(a)(4) (emphasis added). If "telephone call" already included "calls and messages," then the TCPA's definition of "telephone solicitation" would be redundant. "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.' " *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)); *see Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-CV-2811, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.' "); *Dilanyan*, 2025 WL 354686, at *2.

In support of his position, Richards cites the TCPA's use of "call" in § 227(b). He explains that § 227(b) prohibits the use of autodialers or robocallers to make "calls" to pagers,

which display written text. 47 U.S.C. § 227(b)(1)(A)(iii). The prohibition on "calls" to pagers, Richards contends, confirms that Congress understood "calls" to include both voice calls and text-based messages (Filing No. 31 at 13). However, the fact that Congress expressly included calls to pagers in § 227(b) only evidences Congress's intent to omit pagers—and their modern analogs (Filing No. 31 at 7)— from § 227(c). Richards offers no evidence that as of 1991, Congress considered "telephone calls" to be the same as calls to pagers.

**\*4** Richards further argues that § 227(e)'s reference to text messaging "reinforces that texts *are* calls in the lexicon of the TCPA" because it identifies the senders of text messages as "callers." (Filing No. 31 at 23 (emphasis in original)). In 2018, Congress amended § 227(e)—which prohibits "spoofing" phone numbers on caller ID—to include "call[s] made using a voice service or a text message sent using a text messaging service." *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Defendant responds that the explicit reference to text messages in § 227(e) only highlights the term's absence from § 227(c). The Court again agrees with Defendant. The reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so. *See Dilanyan*, 2025 WL 3549868, at *2 ("That Congress updated § 227(e) to include text messages in addition to calls, but has not similarly amended § 227(c)(5), suggests that Congress views a text message as a distinct form of communication to which § 227(c)(5)'s private right of action does not apply.").

Congress highlighted the distinction between §§ 227(b) and (e), which do include text messages, and § 227(c), which does not, in 2019 when it enacted two TCPA reporting provisions: §§ 227(h) and (i). The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, PL 116-105, Dec. 30, 2019, 133 Stat 3274 (2019). Section 227(h) requires the Federal Trade Commission ("FTC") to submit an annual report to Congress regarding consumer complaints and the enforcement of "calls made" in violation of §§ 227(b), (c), and (e). Section 227(i), by contrast, requires the FTC to prescribe regulations to facilitate the sharing of information about "a call made *or a text message sent*" in violation of §§ 227(b) or (e). 47 U.S.C. § 227(i)(1) (emphasis added). Importantly, these statutory subsections make no mention of a text message sent in violation of § 227(c).

Richards also asks the Court to rely on a 2003 FCC order stating that text messages are telephone calls under the TCPA,

WARREN RICHARDS on behalf of himself and others similarly..., Slip Copy (2026)

2026 WL 847568

asserting that *Loper Bright* permits such reliance because Congress expressly delegated to the FCC the authority "to give meaning to a particular statutory term" and to "fill up the details of [the] statutory scheme." *Loper Bright,* 603 U.S. at 395 (citation modified); (Filing No. 31 at 28–30). Other district courts have addressed and rejected this same argument. This Court agrees with their reasoning:

> Determining whether "telephone call" in § 227(c)(5) includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details." In actuality, § 227(c)(1)(E) may run afoul of the nondelegation doctrine, since there are no delimitations on the discretion it grants the Commission....we [thus] reject Plaintiff's request that we use § 227(c)(1)(E) to resurrect *Chevron* out of the grave. § 227(c)(1)(E) does not require this Court to defer to the Commission's interpretation of § 227(c)(5).

*McGonigle v. Pure Green Franchise Corp.*, No. 25-61164-CIV, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026); *see Radvansky*, 2026 WL 456919, at *4 (adopting same reasoning).

Lastly, Richards argues that his position better serves the TCPA's purpose of protecting the privacy rights of residential telephone subscribers (Filing No. 31 at 6). However, Defendant correctly responds that policy considerations do not permit courts to stray from the best reading of a statute, as written. (Filing No. 38 at 13–14); *Facebook,* 592 U.S. at 409 ("[Plaintiff's] quarrel is with Congress, which did not define [the term at issue] as malleably as he would have liked. 'Senescent' [4] as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of [the statute]."); *see also Wis. Central Ltd.*, 585 U.S. at 284 ("Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law.").

 **\*5** This Court, like many others, finds that Richards' reading of § 227(c) "is an eminently reasonable one, . . . . Nevertheless, '[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.' The 'ordinary' principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer. It is not for a court to legislate by reading into the TCPA something that is not there." *Jones*, 792 F. Supp. 3d at 901 (quoting *Loper Bright*, 603 U.S. at 392, 400). "It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 202[6]. The Court confines itself to its assigned role which does not include legislating." *Id.*; *see Stockdale v. Skymount Prop. Grp., LLC*, No. 25 CV 1282, 2026 WL 591842, at *4 (N.D. Ohio Mar. 3, 2026) ("[I]t is for Congress—not this Court— to fill those gaps in the wake of *Chevron*'s reversal.").

Because the Court conclude that "telephone call" under § 227(c)(5) of the TCPA does not include text messages, Richards fails to state a claim, and Defendants motion to dismiss must be **granted**.

### IV. <u>CONCLUSION</u>

For the reasons explained above, Defendant's Motion to Dismiss (Filing No. 15) is **GRANTED**. Richards' claims are **dismissed without prejudice**. [5] Richards is granted leave of **fourteen (14) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If nothing is filed within that time, the Motion to Dismiss will be converted to a dismissal with prejudice, and final judgment will issue.

**SO ORDERED**.

Date: 3/26/2026
Distribution:

Mark S. Eisen

Benesch Friedlander Coplan & Aronoff LLP
meisen@beneschlaw.com

Jessica Garland

Gupta Wessler LLP
jessie@guptawessler.com

David M. Krueger

Benesch Friedlander Coplan & Aronoff
dkrueger@beneschlaw.com

Anthony Paronich
PARONICH LAW. P.C.

anthony@paronichlaw.com

**All Citations**

Slip Copy, 2026 WL 847568

---

### Footnotes

1    This issue is pending before the Seventh Circuit as of the date of this Entry. *Steidinger v. Blackstone Medical Servs.*, No. 25-2398 (7th Cir. Aug. 12, 2025).

2    The Ninth Circuit's decision in *Satterfield* is inapposite for three reasons. First, *Satterfield* adjudicated claims under § 227(b), not § (c). Second, the Ninth Circuit sourced its definition of "call" from the 2002 edition of Webster's Dictionary, rather than a 1990s edition contemporary with the TCPA's enactment. And third, the *Satterfield* court did not find that the 2002 dictionary definition unambiguously showed that § 227(b) applies to text messages. Rather, the Court held that § 227(b) applies to text messages because the *FCC's interpretation* of § 227(b) was *consistent* with the 2002 dictionary's definition. Courts may no longer rely on the FCC's interpretation in this way.

3    The Court is not presently deciding whether "message" as used in the definition of "telephone solicitation" in § 227 includes text messages. The definition of "telephone solicitation" serves only to show that the phrase "telephone call" is limited to live/voice calls, and does not also include "messages."

4    " '[S]enescent technology,' *i.e.*, one likely to become outdated quickly." *Facebook*, 592 U.S. at 396–97.

5    "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed...[unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).

---

**End of Document**  
© 2026 Thomson Reuters. No claim to original U.S. Government Works.